So let's start with our first case, which is High Lonesome Ranch v. Board of County Commissioners for Garfield County. It's number 21-1020, and if counsel for the appellant would enter your appearance, we will go ahead and proceed. Thank you, Judge Matheson. This is Fred Yarger appearing on behalf of appellant, the High Lonesome Ranch. And I see my time has started, so may it please the court. Garfield County admits in its brief that for 80 continuous years, it did nothing to claim ownership of these roads. The fact that the county sat on its supposed ownership rights for eight decades was no accident. These roads are private and always have been as two separate state courts concluded in the interwest litigation nearly 40 years ago. As our brief explains, there are five separate reasons why the judgment below must be reversed. With the time I have, I'd like to focus on just a few of those issues, starting with jurisdiction, and I would like to try to reserve some time for rebuttal. The district court had no jurisdiction because Congress has not waived sovereign immunity for this lawsuit for at least two separate reasons. First, under the Quiet Title Act, this case was required to be started in federal, not state court. And second, the United States government has never disputed title to these roads in a sufficient manner to trigger the Quiet Title Act's waiver of sovereign immunity. As to this first point about the fact that this case was required to be started in federal and not state court, the county tries to complicate this issue and cites a number of irrelevant statutes and jurisdictional theories. But this is based on two very straightforward principles. The first is that a claim cannot be brought against the United States government without the consent of Congress. This means the claim must strictly satisfy the terms of a statute that waives sovereign immunity. Here, the relevant statute is the Quiet Title Act, which is the exclusive means of adjudicating title disputes with the United States government. The Quiet Title Act is very clear that it waives sovereign immunity only for suits filed originally in federal district court. That requirement has not been satisfied because this case started in state, not federal court. The second principle that requires reversal on this issue is that no one, not the ranch, not the county, not the district court, or not the United States attorney, can abandon, forfeit, stipulate to, or otherwise evade the jurisdictional requirements of a statute passed by Congress that waives sovereign immunity. This anti-forfeiture rule is firmly established. One of the best examples of that is the Minnesota v. United States case cited in the briefing, where the Supreme Court said as follows, the fact that removal was on petition of the United States government and the stipulation of the United States attorney is, quote, without legal significance, where jurisdiction has not been conferred by Congress, no officer of the United States has power to give any court jurisdiction. Counsel, those make, they're persuasive on their own, but you do have Grupo Dataflex, a U.S. Supreme Court case, and then you have a Seventh Circuit case of Rody, specifically Grupo. Could you address why there isn't immunity or why there isn't jurisdiction established on the theory there, set forth there? Yes, Your Honor. Under the Dataflex case, that case actually firmly supports the ranch's position. The court said very clearly, litigation conduct like the conduct here, which is not raising an issue until appeal, cannot create jurisdiction. Quote, jurisdiction cannot be expanded to account for the party's litigation conduct. And remember here, we're not dealing with just sort of a procedural or statutory defect. We are dealing with Congress's decision whether or not to waive jurisdiction. Let's go beyond just that sentence that you quoted, which is pretty much standard black letter law you catch in law school. But in Grupo Dataflex, it seems to me that the holding of the case was that if there was jurisdiction by the time judgment was entered and nobody challenged it and it went through trial, that it's going to be accepted. Now, that may seem a little counterintuitive to the normal concepts of jurisdiction and who can waive and how you can waive and all the other things. But that's the United States Supreme Court case. It seems pretty clear. So don't give me just a single line of a statement. Those are often misleading or not always persuasive. But the guts of that case seems to me, said what I said, said, I just need to have you address it. And to be absolutely clear, Dataflex stands for precisely the opposite point. Diversity jurisdiction did, in fact, exist at the time of judgment in Dataflex. The court nonetheless said dismissal was required because the defect existed as of the time of filing. The court did not find a sufficient reason to excuse the time of filing rule and therefore jurisdiction could not be expanded. And that's the chief problem with the Rodas case, Your Honor, from the Seventh Circuit. It confuses and conflates a number of issues. It deems that a strict condition on the waiver of sovereign immunity, which it's absolutely clear only Congress can waive sovereign immunity, is something that can be forfeited during the course of litigation. That is absolutely not true. The Minnesota case from the U.S. Supreme Court said exactly that. Your Honor, Judge Ebell, you said exactly that in a quiet Title Act case called Governor of Kansas v. Kempthorne, where the jurisdictional defect wasn't noticed until appeal. And you said, nonetheless, we have to consider jurisdiction. We have to dismiss this case based on sovereign immunity because you said, quote, The strict jurisdictional nature of sovereign immunity means that neither the actions of the Secretary there, the Secretary of Interior, or any government official or attorney act as a waiver or abandonment of the United States sovereign immunity. Again, only Congress can waive sovereign immunity. So, I mean, all of that is black letter law. And until we got Groupo Dataflex, I would have thought this case would be easy. You've given me a quote, but it does. I mean, the language of that case, the Supreme Court did say when there was a jurisdictional defect at the time of the filing, and you now are saying there wasn't such a defect. But the Supreme Court said there was when there was a jurisdictional defect, but the parties continued. And by the time of judgment, that defect was cured. It's OK. I just don't quite see how you I mean, that's the elephant in the room for me. And you just have to address it. Sure. And so I'll say two things. First, read Rodas carefully and read the underlying cases carefully. Every case Rodas cites from the United States Supreme Court, excuse me, none of those cases had to do with sovereign immunity. Grubs does not have to do with sovereign immunity. Caterpillar does not have to do with sovereign immunity. Dataflex itself does not have to do with sovereign immunity. This case involves sovereign immunity under the Quiet Title Act. This court has held over and over that that doctrine cannot be forfeited or abandoned during the course of litigation. Now, second, you know, I acknowledge that Rodas does complicate the issue on the fact that this case started in state, not federal court. There is an even cleaner way to dispose of this case on jurisdiction, and it's mandatory under this court's precedence. And that is that the BLM, the United States government, has never disputed title to these roads sufficient to waive sovereign immunity. And that has nothing to do with the removal issue. This is a separate and independent grounds for reversal. Under Kane County, Utah, the 2014 case from this court, where, again, sovereign immunity was raised after a nine-day bench trial and certain claims had to be dismissed because the Quiet Title Act was never satisfied, disputing title requires an express dispute by the United States or requires specific actions by the United States disputing title and excluding the public. Here, the record is very clear that the United States never disputed title. At the pleading stage, BLM said in its answer only, and this was the answer to the county's counterclaim, that the county's claim of ownership of the roads over federal land was, quote, a legal conclusion to which no response is required. Kane County looked at exactly that kind of answer, and it held that that was insufficient to dispute title. That's at pages 12, 13 through 14 of the Kane County opinion. At summary judgment, the United States government in this case… Give us those pages again, please. Yes, pages 12, 13 through 14 of the Kane County decision. It's a 2014 decision of this court. At summary judgment in this case, the United States government did not dispute title. In fact, it said it would not oppose judgment against the United States. That's the furthest thing from disputing title that you can get. At trial, BLM, quote, did not present a case or formally take a position. That's according to this report. And in fact, at trial, Judge Jackson remarked the U.S. just, quote, sat there and watched. And now, on appeal, the United States government has filed a notice with this court, and this was in June of 2021, stating that it is taking no position and that, quote, the only issue presented concerns those two parties, meaning the county and the ranch, and not the United States. What about its motion for summary judgment? Did it challenge… Did it assert jurisdiction for its own claims there? It did not. In the summary judgment response and in the response on the removal to the federal court? Your Honor, no party, including the United States government, ever paused to consider jurisdiction in this case. And that's why we find ourselves in the position we're in under Kane County, where jurisdiction now is a mandatory consideration for this. Didn't BLM consider jurisdiction when it removed the case? In other words, the notice of removal refers to the statute. And why wouldn't the notice of removal itself invoke the Quiet Title Act and indicate an interest in the property on the part of BLM? What Kane County says is more than that is required to satisfy the disputed title provision of the Quiet Title Act. You can't simply remove. In fact, that's why so many cases the United States government removes and then immediately dismisses under the Quiet Title Act. Here, we just have an odd situation where the BLM has zero interest in this road, and it said so repeatedly in this case. In this case, it should have been tracked in the state courts. So how can it have zero interest when the road takes BLM to BLM land? I mean, how can it have zero interest if that's where the road goes? Well, again, I'd refer you to the Kane County case where there were roads over federal land, and yet even then, and they were on maps or omitted from maps more accurately, specifying the routes through federal land. And there, even then, this court said that is not enough to dispute title, and we have to consider that on appeal. And if I can, I know there are only two minutes left. I would like to save time. Thank you, counsel. Mr. Anderson? Good morning. May it please the court. My name is Jeff Anderson. I represent the Board of County Commissioners of Garfield County. You know, we're here today because Garfield County followed this court's teachings in the WHI case from 1993. For jurisdiction purposes, this case today is indistinguishable from the WHI case. Both started in state court. We have the same parties of Garfield County. We have the United States. We even have some of the same people here. Judge Ebell and I were both there for the prior WHI case. In WHI, Garfield County sued the United States over a road that crossed both public and private property and provided access to the National Forest. Just like here. We don't have National Forest property, but we have lots of BLM property. In that case, the United States removed the case to the district court. The U.S. was realigned as a plaintiff because it wanted to have the road open just like the county did. So the county and the BLM were aligned. Now, in WHI, this court said that the U.S. could claim an interest in a road that provided access to its property. And that's the case here. So when the ranch sued Garfield County in state court over a road that accessed federal property, it was obvious that the United States needed to be a party to that case. So you're focusing on BLM's interest in access to its property rather than necessarily limiting it to BLI's interest in roads that went over BLM property. Well, that's right. And that's why this case is somewhat different than the cases that come out of Utah. The string of Kane County cases, for example. There, the counties are usually at loggerheads with the federal government. Counties want the roads open. The federal government says, no, we want to have a wilderness area. So that's why it's a little bit different. That's also why the BLM has had some difficulty articulating its position here, because as this panel knows, the RS-2477 is a hot potato. It causes problems for the federal government in Utah. But here, there's no wilderness areas to worry about. The BLM would like to have this road open and Wayne Workmeister of the BLM testified as much at trial because the BLM would like to see public access to public property. This road provides access to 90,000 acres or so of BLM property that's currently locked up by the, well, it's not locked up now because the court below said unlocked gate. But before that case was filed, the land was locked up by high lonesome ranch. So that's an important distinction to keep in mind. There's really no dispute. Can I just ask you? Yes, Judge. Why in its counterclaim, did the county allege a claim under the Quiet Title Act? No, the county did not assert a counterclaim against the United States. And it also didn't, in state court, it didn't file a cross-claim, did it? That's correct. It filed no cross-claim against the United States. So how do we know whether BLM has a disputed interest in the property? The BLM has a dispute with the ranch. The BLM would like the road open across the ranch property. Where did it say, where did it ever say that? It acknowledged that, strangely, that the BLM filed an answer to our counterclaim to the ranch. And in that, indicated that it had an interest in the road. And as I mentioned, the BLM witness that appeared at trial said, yes, the BLM has an interest in having this road open. And on top of that, there's the BLM travel management plan from about 10 or 12 years ago, where it designated the extensions of these roads that are on BLM property as administrative roads, but roads that would be open if there's public access to those points, which is exactly what we've done. But don't we have to work off the pleadings in terms of jurisdiction? And what I'm interested in is where where do we find in the pleadings compliance with the Quiet Title Act for waiver of sovereign immunity? Well, the again, the United States answer to the or reply to the counterclaims. And if that's true, why why didn't that defeat the state court's jurisdiction? And then we're in this argument that the ranch wants to make about derivative jurisdiction. Well, I think it did defeat the state court's jurisdiction, and that's what the state court judge warned of when she said to the ranch, you know, if if you name the United States and they come in and they make a claim to this, I, a state court judge, I'm going to lose jurisdiction. So that's I mean, that's where the problem came from. OK, so and how do you get around this derivative jurisdiction doctrine? Grubbs, Caterpillar and Rodas is the short answer to that. Grubbs and Caterpillar are U.S. Supreme Court cases that indicate that if the United States court district court has jurisdiction of a case at the time, final judgment is entered, then that judgment can stand. The court in Caterpillar specifically said that after all the parties in the court have spent all of the time and resources on a case, it's an overwhelming consideration to not throw all that away and go back and start again. And that's what we would have here. And let me ask you a real quick question on this BLM interest thing and ask for some clarity, which is. The interest that you're describing BLM would need or has is more of a spectator interest at cheerleading. We we sure hope that the county wins as opposed to an ownership interest, isn't it? Doesn't BLM have to assert that it owns the interest? Well, I think under the W.H.I. case, it can and it has. W.H.I. from 1993 from this court specifically says that the United States can claim an easement interest in a road that crosses private property. And I think that's what it did here. I think the the only reason it's been a little bit gunshot here is because of the fact that RS 2477 is a political hot potato. But as I mentioned in the travel management plan, the BLM said they'd like to get this road open to the public if the public can get to it, i.e. if it can cross the private property, which is owned by the ranch. So I think that's another point to think about here is that really the the dispute mainly is between the county and the ranch. The district court here had jurisdiction over those two parties under diversity at the time the judgment was entered in December of 2020. And we explained that in our answer brief and the ranch didn't really deny that at all. So under Grubbs and Caterpillar, with that diversity jurisdiction available, this court can affirm the district court's order and find that there's jurisdiction through the district court and to this court. Well, counsel, how do you answer, though, that the Quiet Title Act is the exclusive means to resolve these issues if the United States has an interest in the road? How can you fall back on diversity jurisdiction when that's the requirement? Well, the Quiet Title Act requires that the United States interest in real estate be adjudicated in federal court, and that's exactly what happened here. So I think we're either we have jurisdiction under the Quiet Title Act or we don't. And what's your vision? Do we or don't we? Well, you do. And why are we talking about diversity? Well, because Grubbs and Caterpillar found jurisdiction under diversity. Well, no, why are we talking about diversity in this case, not Grubbs and Caterpillar? Well, diversity would come in if this court decided that the United States was not necessary for the claims between the county and the ranch. That's been fully adjudicated and the district court had jurisdiction to do that. Now, I think as far as the United States interest here and whether sovereign immunity is waived and whether it's property to adjudicate all that in the federal district court, the Rodas case provides the roadmap for that. And it also points out that this concept of diversity jurisdiction is not quite as inflexible as some courts have found it to be. And in fact, Rodas describes the diversity jurisdiction as more of a procedural issue rather than a jurisdictional issue. And it cites this case from 100 years ago from the U.S. Supreme Court that is cited by the ranch as well, that announced this and said that there are limited exceptions. And then it quoted an 1885 case. But we have a 10th Circuit case that says it's jurisdictional. So doesn't that... That's the Crow case. And that case was decided in 1970. And that was before Grubbs, Caterpillar, or Rodas. It also doesn't go into a very detailed analysis of the diversity jurisdiction. It doesn't question whether, like Rodas does, it really is jurisdiction or whether it's procedural issue. It doesn't look at any of the exceptions or think about whether there's any flexibility, which is what the Rodas case says there is, if you look at the jurisprudence on this particular issue. So I think the other question is, if this court does not have jurisdiction over this case, how did it have jurisdiction over the WHI case? They're identical. 29 years ago, the WHI case was announced by this court, Board of County Commissioners of Garfield County. It was tried to Judge Kane in the District Court for the District of Colorado. It came up to this panel. It was reversed and remanded. Judge Kane wrote an opinion on a denial of summary judgment based on abandonment. And nowhere along the line did anybody, the parties, the courts, the judges, nobody came up with this diversity jurisdiction. So I think the court's going to have to ask itself, OK, if there's no jurisdiction in this case with Highlands and Ranch, what do we do about WHI? The court may not have had jurisdiction there. Is that case good law anymore? What about 42 cases? Was jurisdiction challenged? I mean, I know you can't wait, but I suppose there could just be a precedent where the issue never came up on the radar screen. And we give less weight to that kind of jurisdiction, to authority. Was it put at issue or not in the 10th Circuit? No, it was not. Not in the 10th Circuit, District Court or anywhere else. I thought not. So the problem is that although it's not, jurisdiction isn't waivable, we do have case law that says we're going to not give as much weight when the parties, the court, everybody else seems to have forgotten about it. They shouldn't have, but it's not going to be quite as persuasive precedent for us. Well, in any event, I think that this court can find jurisdiction here. I think the Grubbs, Caterpillar and Rodas cases do provide a way to do that. So I think that the case can proceed. I think that the Supreme Court's statements that once you have a final judgment, the parties have gone through trial all of the time and money has been expended, including a week's worth of the district court time just to try it. Not to mention all the time it took to write the 68 page opinion, which obviously took a lot of time. Why throw that out? And, you know, if the court decided to do that, we would just refile in district court and do it all again. And it all seems to be wasteful. Any other questions on jurisdiction? I know we're running out of time. I have one merits question for you on the R.S. 2477 issue. Does Colorado law provide the correct standard to determine the issue of acceptance of public use under R.S. 2477? Absolutely, absolutely. The 10th Circuit jurisprudence is clear that the mechanics of accepting an R.S. 2477 road are under state law. Well, well, is it all that clear? Didn't didn't this court say in San Juan County that the Utah standard was too lenient? Well, that wasn't a case analyzed in Colorado law, and it's there. I understand where, OK, you say our 10th Circuit precedent is clear. What is it that I mean, it's the Utah cases that are that give us most of the precedent. And maybe it wasn't Colorado law, but the 10th Circuit was not willing to just accept lock, stock and barrel the Utah standard. I see my time has run out, but I'd like to answer your question and point the court again to please. Yeah, please go ahead. Yes. I point the court to the W.H.I. case, which did follow Colorado law on that, which, as we point out in our brief, is pretty clear that all you need is a road to a single property. And that can create an R.S. 2477 road under Colorado law. And I believe in the 10th Circuit as well. Thank you, counsel. Thank you very much. Mr. Arger, thank you, Judge Matheson. I hope folks can hear me. Judge Bell, you're absolutely right. W.H.I. in 1993 considered zero jurisdictional issues. We've checked the docket. We could not find it. It is black letter, United States Supreme Court law that, quote, when a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect exist existed. W.H.I. was decided nearly 25 years before this court's decision in Kane County. And this court has acknowledged over and over in cases like this that sovereign immunity and jurisdiction are case dispositive issues in Quiet Title Act litigation under R.S. 2477 and have to be raised. Second, Judge Matheson, you asked if the county made a claim against the United States and whether or not that sort of put the ownership of the United States at issue. The county absolutely did make a claim against the United States. It is the only party in this case that has ever claimed that the roads crossing federal land belong to anybody other than the United States government. The ranch still pays lease payments to the United States government for the privilege of using those roads. The ranch has zero dispute with the United States government. And in answer to those allegations by the county raised in state court, the federal government simply said those are legal conclusions to which no answer is required. And under Kane County and the pages I cited to you, that is insufficient to dispute title. The last point I'd like to make, the disputed title requirement of the Quiet Title Act is completely independent of the derivative jurisdiction issue. It has nothing to do with removal. It is an independent requirement of the Quiet Title Act. And unless the court has further questions, I will rest. Thank you, counsel. We appreciate the arguments from both of you this morning. The case will be submitted and counsel are excused.